**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**(ATLANTA DIVISION)**

| | | |
|---|---|---|
| ALIMOU DIALLO, individually, and on behalf of all others similarly-situated, | ) ) ) | |
| | ) | CIVIL CLASS ACTION |
| Plaintiffs, | ) | |
| | ) | FILE No. 1:16-cv-189-CC |
| vs. | ) | |
| | ) | *Jury Trial Demanded* |
| UBER TECHNOLOGIES, INC. and RASIER, LLC. | ) ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED CLASS ACTION COMPLAINT**

COMES NOW, ALIMOU DIALLO, by and through the undersigned counsel, and files this, his Complaint on behalf of himself and all other individuals similarly situated against Defendants UBER TECHNOLOGIES INC. ("Uber") and RASIER, LLC ("Rasier"), an Uber subsidiary (collectively, "Defendants"). In support thereof, Plaintiff respectfully shows this Court as follows:

**INTRODUCTION**

1. In this action, Uber employees, who can hope to make perhaps $11.00 an hour, bring suit against Uber for, *inter alia,* failure to remit to them the gratuities that Uber retains for itself, as well as to correct their misclassification as

independent contractors, when they are in fact employees. Thousands of hard-working drivers struggle to pay their employment related expenses, while Uber, a company valued at more than *$50 billion[1]*.

2.      Though it likes to call itself a technology company, Uber is a transportation company.  Uber does not sell software; it sells rides.  And Uber's drivers—like Plaintiff and the Class he represents—are the lifeblood of the company.   Nonetheless, to increase profits, Uber uses its position of power to mislead and take advantage of its drivers at every turn.

3.      After accounting for drivers' expenses, which Uber should—but does not—pay, most drivers do not make minimum wage. Moreover, to further squeeze its drivers, Uber routinely misappropriates money from their fares and shirks its financial commitments.

4.      Though Uber exercises near complete control over its drivers, it classifies them as "independent contractors," rather than "employees" to avoid paying employment related taxes, employment related expenses, and minimum wage.

5.      Uber tells passengers that a gratuity is included in the fares charged via  Uber's electronic payment service.  In reality, Uber fails to remit the gratuity

---

[1]    http://money.cnn.com/2015/10/27/investing/uber-ford-gm-70-billion-valuation/ exploits them to bolster its bottom line

to its employee drivers.

6.      Plaintiff, on behalf of himself and all current and former drivers for Uber within the State of Georgia, brings this action alleging violations of common law and Georgia state law, including, without limitation, Defendants' (i) failure to pay reasonable employment related expenses incurred by Plaintiff including but not limited to mileage and other costs accrued on personal vehicles and gas; (ii) failure to keep required payroll records in violation of Georgia Code § 34-4-5; (iii) unlawful withholding of gratuities; (iv) failure to pay minimum wage in violation of Georgia Code § 34-4-3; (v) breach of contract; (vi) unjust enrichment; (vii) conversion; (viii) unfair competition; and (ix) fraud and misrepresentation.

7.      Plaintiff seeks damages and other appropriate relief on behalf of himself and other similarly situated aggrieved individuals who have worked for or who are currently working for Defendants.

## PARTIES

8.      Plaintiff ALIMOU DIALLO has been at all times relevant, a resident of the state of Georgia (Gwinnet County).

9.      Uber is a Delaware corporation headquartered in San Francisco, California. Uber is authorized to conduct business and does conduct business throughout the state of Georgia.

10.    Rasier, a Delaware limited liability company, is a subsidiary of Uber and is the equivalent of Uber for the purposes of this action. Defendant Rasier is also headquartered in San Francisco, California.

11.    At all relevant times, Defendants were "employers" within the meaning of all applicable statutes.

12.    At all relevant times, the work performed by Plaintiff and similarly situated employees was directly essential to Defendants' business operations.

## JURISDICTION AND VENUE

13.    This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a resident of the State of Georgia and Defendants are foreign business corporations, with principal places of business in California, that are authorized to conduct business in the State of Georgia and do conduct substantial business in the State of Georgia.

14.    The amount in controversy exceeds $75,000.

15.    Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391, as Plaintiff resides in this district, a substantial part of the events giving rise to the claim occurred within this district, and Defendants transact business in this district.

## STATEMENT OF FACTS

4

A.      <u>**Uber Fails Pay Its Employee Drivers Minimum Wage**</u>

16.     Uber compensates its drivers weekly.

17.     Uber takes a percentage of the total fares driven and the driver receives the remainder of the fare.

18.     Because Uber classifies its drivers as independent contractors, Plaintiff has to pay employment related expenses, including gas, car repairs, insurance, and lease payments, from his portion of each fare.

19.     Uber also deducts a $1 "safe ride" fee from each fare which is allegedly used to pay for background checks, driver safety education and development of safety features in its mobile application – an expense the employer should pay, not the employee.

20.     Uber contracts with its employees to pay "cancellation" fares, but fails to do so.

21.     Uber represents to its employees that they can make more money during "surge" periods, such as after a public event such as a football game. In reality, due to traffic congestion, employees are likely to make less money than they ordinarily would.

22.     In March of 2015, Plaintiff began driving for Uber.

23.     Plaintiff continues to work for Uber today as an "UberXL" driver,

operating an SUV with a capacity to carry six (6) passengers.

24.     During the first three (3) months of his employment, Plaintiff drove an average of thirty-five (35) hours per week.

25.     In June of 2015, Plaintiff reduced his hours to an average of twenty-eight (28) to thirty (30) hours per week.

26.     From March through June of 2015, Plaintiff was compensated approximately $300 to $400 each week. After paying employment related expenses, he often earned less than minimum wage.

27.     From June of 2015 through the present, Plaintiff's compensation has been approximately $235 per week.

28.     On average, Plaintiff incurs $130 each week in employment related expenses, including gas, insurance, lease payments, and car repairs.

29.     After expenses, Plaintiff earned approximately $7 per hour from March to June of 2015 – less than the state minimum wage requirement of $7.25 per hour.

30.     From June of 2015 to the present, Plaintiff earns, after expenses, approximately $5.50 per hour – less than the minimum wage required by state and federal law.

31.     At all relevant times, Uber failed to compensate Plaintiff for any

employment related expenses incurred.

**B.        Uber Deceives Drivers and Misappropriates Gratuities**

32.    Uber specifically advertises to its customers that "tips" are included in the cost of the fare:

## DO I NEED TO TIP MY DRIVER?

You don't need cash when you ride with Uber. Once you arrive at your destination, your fare is automatically charged to your credit card on file – there's no need to tip.

(https://help.uber.com/h/1be144ab-609a-43c5-82b5-b9c7de5ec073).

33.    However, Uber drivers are not compensated for gratuities, and Uber specifically instructed its drivers via a training video to refuse a cash gratuity if offered.

34.    Upon information and good-faith belief, Uber intentionally misrepresents that gratuity is included in the cost of the fare.

35.    Uber has retained and continues to retain all gratuities owed to aggrieved employees.

36.    During the course of his employment, Plaintiff did not receive gratuities.

37.    Uber routinely fails to honor its financial commitments to its drivers. For example, Uber often ensures drivers that they can earn guaranteed money

working at a certain time. While the guaranteed rate promised by Uber varied, Plaintiff did not earn the guaranteed hourly pay at any time that Uber promised its drivers could earn at specified rate.

### C.       Uber Increases its Profits by Misclassifying Employees as Independent Contractors To Escape Tax Liability

38.     Plaintiff also alleges that Uber uniformly misclassifies all of its drivers as independent contractors when they are, in fact, employees.

39.     Uber is deeply involved in marketing its transportation services, qualifying and selecting drivers, regulating and monitoring drivers' performance (including disciplining or terminating those who fail to meet standards), and setting fares.

40.     Uber exercises considerable control and supervision over the work details of its drivers—the manner, methods, and means of its drivers' provision of transportation services.

41.     For example, upon signing an agreement to work for Uber, new drivers must watch a video demonstrating how Uber wants them to interact with customers.

42.     Drivers are even instructed on such simple tasks as how to pick up a customer with their car and what type of music to play on the radio.

43.     In short, Uber exercises control over its drivers' performance.

44.     Uber controls the instrumentalities of Plaintiff's job.  Drivers cannot use a car that is more than ten years old, and Uber controls its drivers' car registrations.

45.     Uber monitors its drivers to ensure compliance with Uber's quality control standards. All drivers for Uber must maintain an average customer star evaluation of at least 4.5 out of a possible 5 stars. Instructions on how to improve one's star rating are given to drivers who fall below this average in any given week. If a driver fails to maintain an average customer rating of 4.5, Uber will "deactivate" his or her ability to use the application to pick up customers; in other words, they are fired.

46.     Uber also controls its driver employees' hours. Uber knows the passenger's destination when it sends a fare to its drivers, but does not tell the driver the destination. A driver cannot refuse fares without consequence. If, for example, a driver wanted to stop work at 5pm to attend a child's recital, but received a fare at 4:15pm that wanted to go to a distant location, such as an airport, in heavy traffic, the driver would have to miss the recital.

47.     Uber also unilaterally sets the fares for all rides – with no negotiation or input from drivers - and drivers are required to charge the cost determined solely by Uber.  Uber then bills customers for the entire amount before remitting a

9

portion of the fare to its drivers.

48.     Uber claims a proprietary interest in its riders, which further demonstrates that Uber acts as more than a mere intermediary between riders and drivers.  For instance, Uber prohibits its drivers from answering rider queries about booking future rides outside the Uber application or otherwise soliciting Uber riders.

49.     As a result of its misclassification of employees as independent contractors, Uber failed to provide Plaintiff and other similarly aggrieved employees with itemized wage statements, minimum wages, overtime compensation and reimbursement for necessary expenses (ex. gas, car repairs, insurance and lease payments), as well as to pay employment related taxes. Uber also failed to keep accurate payroll records showing aggrieved employees' hours worked and wages paid.

50.     Uber charges customers in excess of the actual cost of a toll for tolls paid, and retains the excess amounts billed.

51.     On IRS Tax Form 1099s that are issued to drivers, Uber attributes its share of the fare and the $1 Ride Fee as income to drivers.

52.     Uber is aware that drivers have been assaulted and battered by passengers.

53.     Nonetheless, drivers are not allowed to refuse fares without consequence, even if drivers fear that they are in danger.

## CLASS ACTION ALLEGATIONS

54.     This action is properly maintainable as a class action pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23.

55.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, and as a representative of the following proposed class:

> All individuals who are currently working or have worked for Defendants as drivers within the State of Georgia.

56.     Subject to additional information obtained through further investigation and discovery, the definition of the proposed Class may be expanded or narrowed by amendment or amended complaint.

57.     The proposed class specifically excludes the United States of America, the State of Georgia, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Eleventh Circuit, the Justices of the United States Supreme Court, any entity in which Defendant has or had a controlling interest, all officers and agents of Defendant, and all persons related to within the third degree of consanguinity or affection to any of the foregoing individuals.

58.     Upon information and belief, the members of the class are so

numerous that joinder of all of them is impracticable.

59.   The exact number of the members of the class is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery.

60.   The members of the classes are ascertainable in that, upon information and belief, their names and addresses can be identified in business records maintained by Defendants and or by third parties.

61.   There exists a well-defined community of interest in the questions of law and fact that affect the members of the class.

62.   Plaintiff's claims are typical of the claims of the members of the class.

63.   Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice(s) and procedure(s) on the part of Defendants.

64.   Plaintiff's claims are based on the same theory as are the claims of the members of the class.

65.   Plaintiff suffered the same injuries as each of the members of the class.

66.   Plaintiff will fairly and adequately protect the interests of the members of the class.

67.   Plaintiff's interests in this matter are not directly or irrevocably

antagonistic to the interests of the members of the class.

68.   Plaintiff will vigorously pursue the claims of the members of the class.

69.   Plaintiff has retained counsel experienced and competent in class action litigation.

70.   Plaintiff's counsel will vigorously pursue this matter.

71.   Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

72.   The questions of law and fact common to the members of the class predominate over questions that may affect individual class members.

73.   There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including but not limited to:

    a. Whether Defendants have charged customers a gratuity for class members' services;

    b. Whether Defendants failed to distribute the total proceeds of those gratuities to the class members;

    c. Whether Defendants have informed customers that gratuity is included in the price of the Uber service and so there is no need to tip

the drivers;

d.  Whether class members have suffered damages based upon Uber's representation to customers that there is no need to tip the drivers;

e.  Whether Defendants improperly classified class members as independent contractors rather than employees;

f.  Whether class members have been required to pay the expenses of their employment, including the cost of a vehicle, repairs, gas and tolls;

g.  Whether Uber unlawfully denied to compensate its employees, Uber's drivers, those expenses;

h.  Whether Uber paid its drivers minimum wage; and

i.  Whether class members were denied employee benefits as required by law.

74.  A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

75.  If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

76.  The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the

14

classes, and could substantially impair or impede their ability to protect their interests.

77.    The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

78.    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

79.    The damages suffered by each individual member of the class may be relatively small; thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the classes to redress the wrongs done to them.

80.    The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

81.    There will be little difficulty in the management of this action as a class action.

## COUNT I
## BREACH OF CONTRACT

82.    Plaintiff incorporates herein by reference each allegation above as if

15

restated in their entirety.

83.     Uber has a contract with Plaintiff and other drivers to remit to them the total proceeds of all gratuities, as well as to reimburse for expenses and to pay minimum wage.

84.     Plaintiff and other drivers are third-party beneficiaries of customers' contract with Uber that tips are to be remitted to drivers, the terms of which were incorporated by reference from certain advertisements or statements or both that Uber made on its various webpages.

85.     By entering into this agreement, customers intended to secure a financial benefit for drivers, including Plaintiff, in the form of gratuity and to act directly for the drivers' benefit.

86.     At all times, Uber withheld, and continues to withhold, gratuities given by customers to Uber drivers and/or gratuities that are incorporated into the set fare and has not reimbursed expenses.

87.     Defendants' conduct constitutes a breach of contract under Georgia law.

88.     As a result of Defendants' breach, Plaintiff and the members of the proposed class have suffered damages, for which Defendants are liable.

## COUNT II
## UNJUST ENRICHMENT

89.     Plaintiff incorporates herein by reference each allegation above as if restated in their entirety.

90.     Defendants unlawfully retained gratuities and surge fares promised to the drivers as well as cancelled fare fees and failed to reimburse expenses.

91.     Uber obtained these benefits from drivers by making material misrepresentations and taking undue advantage of them.

92.     As a result, Defendants has been unjustly enriched.

93.     Uber's conduct caused damage to Plaintiff and other drivers.

94.     Plaintiff and the proposed class members are entitled to restitution for their full share of the proceeds of the improperly retained gratuities.

## COUNT III
## CONVERSION

95.     Plaintiff incorporates herein by reference each allegation above as if restated in their entirety.

96.     Plaintiff had the right to possession of tips, surge fares, minimum wage, and money spent for expenses.

97.     Uber interfered with Plaintiff and the other drivers' right to their property by refusing to relinquish the property to them.  Instead, Uber retained the

17

property for its own benefit without Plaintiff's permission.

98.    Defendants' conduct, as described herein, constitutes Conversion under Georgia law.

99.    As a result of Defendants' conduct, Plaintiff and the members of the proposed class have suffered damages, and are entitled to restitution for their full share of proceeds, as well as treble damages.

## COUNT IV
## <u>UNFAIR COMPETITION</u>

100.   Plaintiff incorporates herein by reference each allegation above as if restated in their entirety.

101.   Plaintiff and other drivers' property—gratuities, surge fares, and cancellation fees—was misappropriated by Uber for its commercial advantage.

102.   Defendants unjustly profited by Plaintiff's expenditure of time, labor and talent.

103.   Uber's conduct has damaged Plaintiff and the members of the proposed class.

## COUNT V
## <u>FRAUD</u>

104.   Plaintiff incorporates herein be reference each allegation above as if restated in their entirety.

105.   Defendants made material representations of fact, including, but not limited to: that Plaintiff would receive gratuities, a wage in excess of minimum wage, cancellation fees, and surge fares, which was untrue, which Defendants knew were untrue statements at the time, with the intent to deceive, which Plaintiff justifiably relied upon, causing Plaintiff to incur damages.

106.   Uber knew at the time it made these misrepresentations—or, at the very least, made the misrepresentations recklessly—that it would not pass along these monies to Plaintiff and other drivers based on its past practices of not doing so.

107.   Plaintiff and other drivers reasonably and justifiably relied on these misrepresentations and continued to drive for Uber because Uber was their employer and the party responsible for overseeing the payment of these monies.

108.   Defendants also informed Plaintiff and proposed class members that they would receive a cancellation fee refund if a passenger cancelled, which, upon information and good-faith belief, Defendants knew was an untrue statement at the time, with the intent to deceive, which Plaintiff justifiably relied upon, causing Plaintiff to incur damages.

109.   Uber's conduct caused damage to Plaintiff and the members of the proposed class.

19

## COUNT VI
## <u>VIOLATIONS OF O.C.G.A. §§ 34-4-3 and 34-4-5</u>

110.   Plaintiff incorporates herein by reference each allegation above as if restated in their entirety.

111.   Despite the existence of an agreement indicating Plaintiff is an independent contractor, the treatment of Plaintiff, and control exercised by Uber, indicate that Plaintiff is an employee entitled to the protections of wage and hour laws.

112.   Plaintiff seeks damages for violations of the following sections of the Georgia Code:

a.   Failure to pay minimum wage in violation of Ga. Code § 34-4-3; and

b.   Failure to keep required payroll records in violation of Ga. Code § 34-4-5.

## COUNT VII
## <u>FAILURE TO PROVIDE SAFE WORK ENVIRONMENT</u>

112.   Under Georgia law, an employer has a duty to provide a safe place to work, a duty to give warning of dangers of which the employee might reasonably be expected to remain in ignorance, and a duty to promulgate and enforce rules for the conduct of employees that would make the work safe.

113.   Defendants failed to provide Drivers with a safe work environment.

114.   Because Uber has wrongfully misclassifies drivers as independent contractors, they have no insurance and further, cannot collect worker's compensation.

115.   Defendants are aware that passengers can act violently towards drivers, yet terminates drivers if they refuse fares, and have failed to offer drivers any meaningful protection.

116.   A a result of Defendants' failure to provide Plaintiff and the members of the proposed class with a safe work environment, Plaintiff and the members of the proposed class have suffered, and continue to suffer, damages.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    An award of damages, including compensatory, punitive, and treble damages, as well as back pay, in an amount to be determined at trial;

(b)    Determining that this action is a proper class action and designating Plaintiff as class representative of the proposed Class pursuant to Fed. R. Civ. P. 23;

(c)    That notice issue to the proposed Class of the action;

(d)    That the Court issue an injunction against Defendants prohibiting them from engaging in the unlawful practices described herein,

policies and patterns set forth herein;

(e)     That the Court award Plaintiff and the members of the proposed class Liquidated Damages, including, but not limited to back pay;

(f)     That the Court award Plaintiff and the members of the proposed class reasonable attorneys' fees and costs of this action;

(g)     That the Court award Plaintiff and the proposed class Pre-judgment and post-judgment interest as permissible by law; and

(h)     That Defendants return to Plaintiff and the members of the proposed Class any gratuities and any such other funds wrongfully kept by Defendants; and

(i)     Such other and further relief that the Court may deem just and proper.

## JURY TRIAL DEMAND

117.    Plaintiff is entitled to, and hereby demands, a trial by jury.

Dated: February 2, 2016.

Respectfully submitted,

/s/Craig J. Ehrlich
Craig J. Ehrlich
Georgia Bar No. 242240
The Law Office of Craig J. Ehrlich, LLC
2300 Henderson Mill Road, Suite 300
Atlanta, Georgia 30345
Tel: (404) 365-4460
Fax: (855) 415-2480

22

Craig@EhrlichLawOffice.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Time New Roman and a point size of 14.

/s/Craig J. Ehrlich
Craig J. Ehrlich